# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

JEFFREY RICHARD RICE,                    :

         Plaintiff,                    :

                       :

       v.                    :     Civil Action No. 06-335-KAJ

                       :

UNITED STATES OF AMERICA,                :

                       :

         Defendant.                    :

## UNITED STATES' OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

COLM F. CONNOLLY
United States Attorney

Patricia C. Hannigan
Assistant United States Attorney
Delaware Bar I.D. No. 2145
The Nemours Building
1007 Orange Street, Suite 700
P. O. Box 2046
Wilmington, DE 19899-2046
Patricia.Hannigan@usdoj.gov
(302) 573-6277

Dated: **August 22, 2006**

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

NATURE AND STAGE OF THE PROCEEDING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      Immunity Under the FTCA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
      Summary Judgment Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
      Discretionary Function Exception . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
      Independent Contractor Exception . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

# TABLE OF AUTHORITIES

<u>**CASES**</u>                                                            <u>**PAGE**</u>

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Bartnicki v. Vopper*
    200 F. 3d 109 (3d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Baum v. United States*
    986 F. 2d 716 (4th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Berkovitz v. United States*
    486 U.S. 531 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Celotex Corp. v. Catrett*
    477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Cope v. Scott*
    45 F.3d 445 (D.C. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Dalehite v. United States*
    346 U.S. 15 (1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Feyers v. United States*
    749 F.2d 1222 (6th Cir. 1984)
    *cert. denied*
    471 U.S. 1125 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Logue v. United States*
    412 U.S. 521 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Mitchell v. United States*
    225 F.3d 361 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Moyer v. Washington State*
    106 F.3d 408
    1997 WL 22422
    (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Rich v. United States*
    119 F.3d 447 (6th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**PAGE**

*Sant v. United States*
   896 F.Supp. 639
   (W.D. La 1995) ........................................................ 6

*United States v. Gaubert*
   499 U.S. 315 (1991) ................................................... 5

*United States v. Orleans*
   425 U.S. 807 (1976) ................................................... 8

*United States v. Varig Airlines*
   467 U.S. 797 (1984) ................................................... 5

*U.S. v. Mitchell*
   445 U.S. 535 (1980) ................................................... 4

*U.S. v. Nordic Village, Inc.*
   503 U.S. 30 (1992) .................................................... 4


## OTHER AUTHORITIES


Federal Tort Claims Act
   28 U.S.C. § 1346(b) ................................................... 5
   28 U.S.C. 2671 ..................................................... 1, 8
   28 U.S.C. § 2680(a) ................................................... 5

Federal Rules of Civil Procedure
   12(b) ............................................................... 4
   12(b)(1) ........................................................... 10
   12(b)(6) ........................................................... 10
   56 ................................................................. 4

Code of Federal Regulations
   23 C.F.R. § 460.2 .................................................... 2

## NATURE AND STAGE OF THE PROCEEDING

This case is brought under the Federal Tort Claims Act, 28 U.S.C. 2671 *et seq* ("FTCA"). Plaintiff alleges physical injuries caused by the negligence of the United States Army Corps of Engineers ("Corps") as a result of the Corps' failure to maintain a certain roadway in a "safe and driveable condition," and in its failure to warn of potential hazards on the roadway. Complaint, ¶¶ 13-18. (D.I. 1).

Simultaneously with the filing of this Brief, the Government is filing a Motion to Dismiss, or in the Alternative, for Summary Judgment. This is the Opening Brief in support of that Motion.

## SUMMARY OF ARGUMENT

1.     The FTCA retains sovereign immunity over discretionary decisions by federal officials where those decisions are grounded in public policy. The actions complained of in this matter were such decisions. The Court thus lacks subject matter jurisdiction.

2.     The FTCA also prohibits a finding of liability against the United States based upon actions taken by an independent contractor with the Government. The actions complained of here were taken by a government contractor, thus summary judgment in favor of the United States is appropriate..

## STATEMENT OF FACTS

The Complaint alleges that "[o]n or about May 29, 2005, around 12:31 p.m., Plaintiff was driving his motorcycle in the right, southbound lane of Route 896 approaching the [Summit] Bridge incline and the Bridge." Compl. ¶ 10. The Complaint continues, "Plaintiff's motorcycle struck a massive pot hole in the middle of the right southbound lane of Route 896 in the area of

the Bridge Incline." Compl. ¶ 11. As a result, "Plaintiff was thrown through the air and onto the

Bridge Incline and Bridge road surfaces," according to the Complaint. Compl. ¶ 12. Plaintiff

seeks recovery of damages resulting from this incident, alleging that the negligence of the Corps

was the cause.

It is undisputed that the United States owned the Summit Bridge and the approaches to it

on the date of the incident alleged. See Affidavit of David Olson, Paragraph No. 2, at page __ in

Appendix to Opening Brief, hereinafter "A-__." However, the Corps had entered into a contract

with the Delaware Department of Transportation ("DelDOT") for maintenance of the relevant

section of roadway. See the "AGREEMENT" between DelDOT and the Corps, attached to the

Olson Affidavit at A-1 ("the Contract"). Specifically, Paragraph No. 1 of the Contract provides

that DelDOT "shall maintain the traveled surface of the Summit Bridge and approaches

(including the paved shoulders) thereto, from approximately 2,210 feet to the south from the

roadway construction joint at the end of the south abutment parapet wall and to approximately

1,603 feet to the north from the roadway construction joint at the end of the north abutment

parapet wall." A-3. According to Mr. Olson's Affidavit, the incident alleged in the Complaint

occurred on a stretch of roadway that falls within these parameters. A-1.

In addition, Paragraph No. 5 of the Contract specifies that DelDOT is responsible for

posting any necessary warning signs, thus: "the maintenance work to be performed on the

Summit Bridge ... shall consist of, but not be limited to, the following: ... g. Erect and maintain

any necessary signs and delineators for traffic control guidance or information." A-4. This is

consistent with the definition of "road maintenance" in the Federal Highway Administration

Regulations, published in the Code of Federal Regulations, which are followed by the Corps,

according to Mr. Olson's Affidavit. Paragraph No. 8, A-2. Specifically, 23 C.F.R. § 460.2

defines "maintenance" as "the preservation of the entire highway, including surfaces, shoulders,

roadsides, structures, and such traffic control devices as are necessary for its safe and efficient

utilization."

Following execution of the Contract, the Corps retained no regular responsibility for road

maintenance or placement of warning signs on the area at issue in the Complaint. See Olson

Affidavit, Paragraph No. 5, A-1. DelDOT supplied its own tools, equipment and materials as

necessary to carry out its obligations under the contract. *Id.*, Paragraph No. 7, A-2. The

Government did not supervise any day-to-day operations in the area and retained no control over

the detailed physical performance of DelDOT in connection with either road maintenance or

signage. *Id.* To the contrary, "minor repairs to the roadway not in excess of ten (10) square

yards" (such as filling potholes) were specifically consigned by the contract to DelDOT. See

Contract, Paragraph No. 5.c, A-4.[1]

Occasionally, in very limited circumstances, the Corps would carry out pothole repairs on

the relevant stretch of roadway. See Olson Affidavit, Paragraph No 5, A-1. That took place only

upon the coming together of several unlikely events. If a pothole was urgently brought to the

Corps attention, and DelDOT was for some reason unable to repair it promptly, and if the Corps

happened to have available the necessary equipment, materials, manpower and budget, the Corps

would make the repair. *Id.* Otherwise, the Corps' role under the contract was essentially limited

to reimbursing DelDOT for its expenses. *Id.*

---

[1] Although not relevant here, repairs greater in size than ten (10) square yards required
prior written approval of the Government. See Olson Affidavit, Paragraph No. 5, A-1.

## ARGUMENT

### Immunity Under the FTCA

"[T]he United States, as sovereign, is immune from suit save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *U.S. v. Mitchell*, 445 U.S. 535, 538 (1980). Courts must strictly construe all waivers of the Government's sovereign immunity and must resolve all ambiguities in favor of the sovereign. *U.S. v. Nordic Village, Inc.*, 503 U.S. 30, 33 (1992).

The Government argues that the Complaint should be dismissed for lack of subject matter jurisdiction or in the alternative, for failure to state a claim upon which relief may be granted. Each argument is grounded in an exception to the FTCA's limited waiver of sovereign immunity.

### Summary Judgment Standard

Where, as here, matters outside the Complaint are "presented to and not excluded by the Court," in support of an argument that the Complaint fails to state a claim upon which relief can be granted, the Court will treat the motion as one for summary judgment, and dispose of it "as provided in Rule 56." Fed.R.Civ.P. 12(b).

Summary judgment under Rule 56 is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of material fact is one that will permit a reasonable fact-finder to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the Court must view all facts, and all inferences fairly drawn therefrom, in the light most favorable to the non-moving party. *Bartnicki v. Vopper*, 200 F. 3d 109, 114 (3d Cir. 1999).

-4-

**Discretionary Function Exception**

Pursuant to 28 U.S.C. § 2680(a), "[t]he provisions of [the FTCA] and section 1346(b) of this title shall not apply to - (a) any claim based upon ... the exercise or performance, or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

There is a two-step inquiry to determine if a given act or omission falls within the Discretionary Function Exception. First, the court must determine whether the act or omission complained of was "discretionary." An act is discretionary if it involves an element of judgment or choice. *United States v. Gaubert*, 499 U.S. 315, 322 (1991); *Berkovitz v. United States*, 486 U.S. 531, 536 (1988). The requirement of judgment or choice is not satisfied if a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Id.* Thus, if there are mandatory guidelines a federal employee must follow, an action taken thereunder will not be protected as "discretionary," under the Discretionary Function Exception. *Dalehite v. United States*, 346 U.S. 15, 34 (1953).

Secondly, if the action is discretionary, the court must address whether the act is "the permissible exercise of policy judgment." *Berkovitz*, 486 U.S. at 537; *Gaubert*, 499 U.S. at 323. The Discretionary Function Exception "protects only governmental actions and decisions based on considerations of public policy." *Berkovitz*, 486 U.S. at 537. This is so because Congress' purpose in enacting the exception was to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984).

-5-

Here, the Corps' decision to entrust to DelDOT the responsibility of maintaining in a safe condition both the Summit Bridge and roadways leading to it, and of warning motorists of unsafe road conditions, was clearly discretionary. There are no mandatory guidelines applicable to the Corps' decision to enter into a maintenance contract with DelDOT. See Olson Affidavit, Paragraph No. 8, A-2. *See, also Sant v. United States*, 896 F.Supp. 639 (W.D. La 1995)(the federal government's obligation to maintain the roads, including placement of "such traffic control devices as are necessary for its safe and efficient utilization" had been contracted to the local government; the federal government could not be held liable under the FTCA as it had no duty to maintain the intersection where the alleged accident occurred); *Moyer v. Washington State*, 106 F.3d 408 (Table). 1997 WL 22422 (9th Cir. 1997) (agreements covering the road where plaintiffs' decedents were killed gave the Washington State Department of Transportation responsibility for maintenance; FTCA action was properly dismissed under the Discretionary Function Exception).

Moreover, there are important public policy issues at stake in the Corps's discretionary decision to entrust road maintenance to DelDOT. According to Mr. Olson's Affidavit, primary among them are public safety and conservation of limited economic resources, which have been recognized by Courts as relevant to the Discretionary Function analysis, specifically in the context of highway maintenance by the Government. In *Mitchell v. United States*, 225 F.3d 361 (3d Cir. 2000), for example, where a motorist was injured when her car collided with a wall at the end of a drainage ditch in a national recreation area, the Third Circuit held that the National Park Service's decision not to repair or redesign the wall was protected under the Discretionary

-6-

Function Exception, because the Service had limited economic resources and necessarily had to prioritize among various desirable improvements to the roadway.

Similarly, in *Cope v. Scott*, 45 F.3d 445 (D.C. Cir. 1995), the District of Columbia Court found that the Park Service's decision not to re-pave a particularly slippery stretch of Rock Creek Parkway was protected. The Court noted that the government's decision required balancing policy factors such as the road's "overall purpose, the allocation of funds among significant project demands, the safety of drivers and other park visitors, and the inconvenience of repairs as compared to the risk of safety hazards." *Cope*, 45 F.3d at 451.

In *Baum v. United States*, 986 F. 2d 716, 724 (4th Cir. 1993), the Fourth Circuit rejected a claim that the National Park Service should be held liable for injuries caused by allegedly defective guardrails, observing that "[t]he decision of how and when to replace a major element of a substantial public facility is, like the decisions involving design and construction, at bottom a question of how best to allocate resources. Such a decision is inherently bound up in considerations of economic and political policy, and accordingly is precisely the type of governmental decision that Congress intended to insulate from judicial second guessing through tort actions." In turn, the *Baum* analysis was relied on in *Rich v. United States*, 119 F.3d 447, 451 (6th Cir. 1997) ("any object markers and warning devices on the railings and [bridge] abutment fall within the discretionary judgment of the Corps, and decisions regarding placement of warnings are protected by the discretionary function exception of the FTCA.")

Thus, even if the Government had not contracted to DelDOT the duty to maintain the roadway at issue here, the Corps' failure to fill the pothole at issue, and its failure to warn, would not be actionable under the FTCA. As evidenced by the authorities reviewed above, and in light

-7-

of the Olson Affidavit, it is clear that the Corps' decision to enter into the maintenance contract with DelDOT was discretionary and was made because of considerations of both economic and public safety issues. The Government urges the Court to find its actions protected under the Discretionary Function Exception to the FTCA, and to dismiss the Complaint. *Feyers v. United States*, 749 F.2d 1222, 1225 (6th Cir. 1984), *cert. denied* 471 U.S. 1125 (1985)(dismissal for lack of subject matter jurisdiction appropriate where the Government qualifies for the Discretionary Function Exception.)

**Independent Contractor Exception**

In the alternative, the Government has also moved for dismissal or summary judgment for lack of subject matter jurisdiction on the grounds that the FTCA specifically prohibits a finding of liability on the part of the Government where the act or omission complained of was that of an independent contractor.

As noted above, the FTCA is a limited waiver of sovereign immunity, subjecting the United States to liability for injuries caused by the negligence of "employees of any federal agency." 28 U.S.C. § 2671. The United States is not liable for the negligent acts of a government contractor. *United States v. Orleans*, 425 U.S. 807 (1976). Whether an entity should be considered an independent contractor or a federal agency depends upon the degree of control maintained by the Government over the activity at issue. In order to hold the Government liable it must have exercised supervision over day-to-day operations or controlled the detailed physical performance of the contractor. *Id.* at 815; *Logue v. United States*, 412 U.S. 521, 527-28 (1973).

-8-

In this case, the Contract between the parties specified "nothing contained herein shall be construed to create an agency or employer/employee relationship between the parties .... Furthermore, the legal liability of the United States of America for any negligence or accident shall be limited to that prescribed by the Federal Tort Claims Act." Contract, Paragraph No. 13, A-5.

According to the Affidavit of Mr. Olson, DelDOT, in fact, carried out its responsibilities consistent with the contractual language. Olson Affidavit, Paragraph No. 7, A-2. DelDOT supplied its own tools, equipment and materials as necessary to carry out its obligations under the contract. *Id.* The Government did not supervise any day-to-day operations in the area and retained no control over the detailed physical performance of DelDOT in connection with either road maintenance or signage. *Id.*

In summary, the factual record in this matter is uncontroverted, and supports a finding that the United States did not retain sufficient control over the activities of DelDOT to subject it to liability for any alleged negligence by the latter.

## CONCLUSION

Because it was a discretionary decision by the Corps to delegate to DelDOT the obligations both of maintaining the roadway where the accident alleged in the Complaint took place and of placing warning signs, and because there is a public policy rationale supporting that discretionary decision, the decision falls under the Discretionary Function Exception to the Federal Tort Claims Act, and the United States is insulated from liability by sovereign immunity. Accordingly, the Court lacks jurisdiction and the Complaint should be dismissed with prejudice.

In the alternative, the Government is entitled to the protection of the Independent

Contractor Exception to the FTCA. Because the United States contracted with a non-federal

entity both to maintain the roadway at issue and to place appropriate signage, liability in the

discharge of those duties cannot be imputed to the Government.

Accordingly, taking all the facts in the Complaint in the light most favorable to the

Plaintiff, the Court lacks jurisdiction and the Complaint fails to state a claim upon which relief

can be granted. The Complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(1) and

12(b)(6). The Government urges that summary judgment in favor of the United States is

appropriate.

> Respectfully submitted,
>
> COLM F. CONNOLLY
> United States Attorney
>
> By:/s/Patricia C. Hannigan
> Patricia C. Hannigan
> Assistant United States Attorney
> Delaware Bar I.D. No. 2145
> The Nemours Building
> 1007 Orange Street, Suite 700
> P. O. Box 2046
> Wilmington, DE 19899-2046
> Patricia.Hannigan@usdoj.gov
> (302) 573-6277

Dated: **August 22, 2006**

# Appendix

# TABLE OF CONTENTS

**PAGE**

AFFIDAVIT OF DAVID OLSON ............................................... A-1

CONTRACT ............................................................ A-3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

JEFFREY RICHARD RICE,     :

    Plaintiff,      :

           :

  v.         :  Civil Action No. 06-335-KAJ

           :

UNITED STATES OF AMERICA,  :
and the UNITED STATES ARMY   :
CORPS OF ENGINEERS,    :

           :

    Defendants.    :

### AFFIDAVIT OF DAVID OLSON

I, David Olson, being duly sworn, hereby depose and say:

1. I am the Assistant Chief of Operations, Army Corps of Engineers ("Corps"), Philadelphia District. In my capacity as Assistant Chief I am familiar with Contract No. DACW61-84-C-0029, dated February 15, 1984 ("the Contract"). I am also familiar with the road maintenance and signage work performed under the Contract by the Delaware Department of Transportation, Division of Highways ("DelDOT"). A true and correct copy of the Contract is attached as Attachment 1 to this Affidavit.

2. The Corps owns the Summit Bridge and the approaches to the Summit Bridge.

3. The Contract, among other things, serves the purpose of turning the responsibility for regular maintenance of the Summit Bridge and the approaches thereto over to DelDOT. The Contract was in force on May 29, 2005.

4. I have reviewed the Complaint filed in the captioned matter, and I have determined that the alleged incident took place within the area of DelDOT's road maintenance obligations ("the area of DelDOT's responsibility"). Any warning signs to be posted within this area were also DelDOT's responsibility, as part of regular maintenance.

5. In the area of DelDOT's responsibility, DelDOT took nearly complete control for customary road maintenance, including the filling of potholes. The only exceptions were when (a) an area of needed repair was urgently brought to the Corps' attention, (b) the Corps had resources on hand with which to respond (including equipment, materials, manpower and budget) and (3) DelDOT was unable to respond promptly. Under those circumstances, the Corps would occasionally engage in road repair itself within the area of DelDOT's responsibility.

responsibility for signage rested with DelDOT under the Contract, in the area of its responsibility.

7. When DelDOT carried out its obligations under the contract, including repairing potholes and placing warning signs, it used its own tools, equipment, materials and labor as necessary. The Corps did not supervise any day-to-day operations in the area of DelDOT's responsibility and retained no control over the detailed physical performance of DelDOT in connection with either road maintenance or signage.

8. I am unaware of any mandatory regulation or directive requiring the Corps to carry out road maintenance of the Summit Bridge (or other areas, for that matter) in any particular way. To the contrary, it is my understanding that the Philadelphia Regional Office of the Corps is authorized, in its discretion, to enter into appropriate contracts for road maintenance, taking into consideration both budgetary constraints and public safety. In discharging this responsibility, the Corps follows the Federal Highway Administration Regulations, published in Volume 23 of the Code of Federal Regulations.

DAVID OLSON
Assistant Chief of Operations
Army Corps of Engineers

SWORN TO AND SUBSCRIBED

this 21st day of August, 2006.

Notary Public

My Commission expires:

BRENDA J. MINDERMANN
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires 11/15/2007

A-2

Contract No. DACW61-84-C-0029
Dated February 15, 1984

## AGREEMENT

THIS AGREEMENT, made and entered into this _____5th_____ day of
_____April_____ A.D. 1983 between the DIVISION OF HIGHWAYS of the STATE OF
DELAWARE, party of the first part, hereinafter called the DIVISION, AND THE
UNITED STATES OF AMERICA, represented by the Contracting Officer executing this
agreement, party of the second part, hereinafter called the GOVERNMENT.

WHEREAS, the Summit Bridge, the St. Georges Bridge, the Reedy Point Bridge
and Chesapeake City Bridge which cross the Chesapeake and Delaware Canal will
require certain maintenance operations throughout their length, and,

WHEREAS, it has been proposed that such maintenance on these four bridges
be accomplished by the DIVISION with reimbursement being made annually to the
DIVISION by the GOVERNMENT for maintenance performed, and,

WHEREAS, the DIVISION does agree to perform the designated maintenance and
does agree to reimbursement annually by the GOVERNMENT

WITNESSETH:  Now, therefore, in consideration of the sum of One Dollar
($1.00) each to the other paid, the parties hereto do mutually agree:

1.  THAT, the DIVISION shall maintain the traveled surface of the Summit
Bridge and approaches (including the paved shoulders) thereto, from approxi-
mately 2,210 feet to the south from the roadway construction joint at the end
of the south abutment parapet wall and to approximately 1,603 feet to the north
from the roadway construction joint at the end of the north abutment parapet
wall.

2.  THAT, the DIVISION shall maintain the traveled surface of the St.
Georges Bridge and approaches (including the paved shoulders) thereto; the area
to be maintained extending approximately 1,684 feet southerly from the roadway
construction joint at the end of the south abutment parapet wall to approximately
770 feet to the north of the roadway construction joint at the end of the north
abutment parapet wall.

3.  THAT, the DIVISION shall maintain the traveled surface of the Reedy
Point Bridge and the approaches (including the paved shoulders) thereto; the
area to be maintained extending approximately 747 feet southerly from the end
of the south approach slab to 807 feet northerly from the end of the north

A-3

Contract No. DACW61-84-C-0029

approach slab.

4. THAT, the DIVISION shall maintain the traveled surface of the Chesapeake City Bridge and the approaches from a point where the access road to South Chesapeake City intersects the south approach to the point where the access road to North Chesapeake City intersects the north approach.

5. THAT, the maintenance work to be performed on the Summit Bridge, the St. Georges Bridge, and the Reedy Point Bridge shall consist of, but not be limited to, the following:

a. Ice and snow removal and clearing from the roadway surface, (including paved shoulders) as necessary.

b. Applying abrasive materials and ice melting materials to the roadway surface (including paved shoulders) as necessary. Sweeping of the pavement surfaces and removal of sand, gravel and debris normally associated with street cleaning.

c. Minor repairs to the roadway surface not in excess of ten (10) square yards without prior written approval of the GOVERNMENT.

d. Maintain and make necessary repairs to the guardrail on the approaches.

e. Maintain the slopes on the approaches to guard against erosion damage.

f. Paint and maintain such roadway surface markings as are found necessary for the proper control of traffic.

g. Erect and maintain any necessary signs and delineators for traffic control guidance or information.

6. THAT, the maintenance work to be performed on the Chesapeake City Bridge will be limited to sweeping of the pavement surface and removal of sand, gravel and debris normally associated with street cleaning.

7. THAT, the DIVISION shall notify the Chesapeake City Project Office prior to the commencement of all maintenance work other than pavement markings or sign replacement, unless such work is of emergency nature and falls outside the normal working hours.

8. THAT, the DIVISION shall keep a complete and accurate record of the costs of such maintenance including itemized labor costs at current salary and wage rates of the DIVISION, itemized equipment costs at current rental rates for the several types of equipment, itemized cost of materials and miscellaneous costs such as telephone charges and meals for employees required during overtime periods necessitated by emergency conditions.

A-4

Contract No. DACW61 84-C-0029

9.   THAT, the DIVISION shall prepare an annual statement of expenses incurred and shall submit to the GOVERNMENT on or before March 31 of each year such statement for payment. This procedure shall continue from year to year until this agreement shall have been terminated as provided in Paragraph 12 below. The average amount of the annual expenses incurred shall not exceed $100,000 per year during the life of this contract.

10.   THAT, upon receipt of the aforementioned annual statement of maintenance costs the GOVERNMENT shall process same of payment and shall reimburse the DIVISION for maintenance of the four bridges in accordance with such statement.

11.   THAT, nothing in this agreement shall be construed as imposing any responsibilities or obligations upon the DIVISION, its employees or its agents, relative to any construction projects throughout the length of any of the four bridges.

12.   THAT, it is hereby mutually agreed that either party hereto may termi nate this Agreement by giving to the other party ninety (90) days written notice of desire to so terminate the agreement; should this agreement be so terminated and should the terminal date occur on any date other than 30 June of any year, the DIVISION may submit immediately a statement of maintenance expenses for the fiscal year to date and the GOVERNMENT shall process same without delay and re- imburse the DIVISION for such expenses.

13.   THAT, nothing contained herein shall be construed to create an agency or employer/employee relationship between the parties, nor will this agreement be deemed to create a third-party beneficiary and/or be executed for the benefit of any such third-party benficiary.  Furthermore, the legal liability of the United States of America for any negligence or accident shall be limited to that prescribed by the Federal Tort Claims Act and the legal liability of the State of Delaware shall be limited to that prescribed by State Law.

IN WITNESS WHEREOF, the said parties hereto have hereunto set thier hands and seals the day and year aforesaid

STATE OF DELAWARE
DIVISION

ATTEST                                    BY: _Kermit H. Justice_____
                                          KERMIT H. JUSTICE, Secretary
                                          Department of Transportation

A-5

_____ (SEAL)
STEPHEN T. GOLDING
Director of Administration

BY: _____
R. D. BEWICK, Jr., Director
Division of Highways

BY: _____
Roger L. Baldwin
Lieutenant Colonel, Corps of Engineers
Contracting Officer

WITNESS:

_____

Contract No. DACW61-84-C-0029

A-6

## CERTIFICATE OF SERVICE

I, Patricia C. Hannigan, hereby certify that on **August 22, 2006**, I electronically filed the foregoing **UNITED STATES' OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT** with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

**Neal J. Levitsky, Esquire**
Fox Rothschild LLP
919 North Market Street, Suite 1300
P.O. Box 2323
Wilmington, DE 19899-2323
(302) 654-7444
nlevitsky@frof.com


COLM F. CONNOLLY
United States Attorney

By: /s/Patricia C. Hannigan
Patricia C. Hannigan
Assistant United States Attorney
Delaware Bar I.D. No. 2145
The Nemours Building
1007 Orange Street, Suite 700
P. O. Box 2046
Wilmington, DE 19899-2046
(302) 573-6277
Patricia.Hannigan@usdoj.gov