## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JEFFREY RICHARD RICE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C. A. No. 06-335-SLR/MPT |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATION

Neal J. Levitsky, Esquire and Seth A. Neiderman, Esquire, Fox Rothschild LLP, Citizens Bank Center, Suite 1300, 919 N. Market Street, Wilmington, DE 19899-2323.

Colm F. Connolly, Esquire and Patricia C. Hannigan, Esquire, United States Attorneys Office, The Nemours Building, 1007 Orange Street, Suite 700, P.O. Box 2046, Wilmington, DE 19899-2046

Wilmington, DE
April 22, 2008

Thynge, U.S. Magistrate Judge

**Introduction**

This is a personal injury case involving claims against the federal government. Plaintiff, Jeffrey Rice ("Rice") claims that he was injured while riding his motorcycle on a road allegedly under the control and maintenance of the United States Army Corp of Engineers ("Corps"). His motorcycle "struck a massive pothole in the middle of the right southbound lane of Route 896."[1] Consequently, Rice was thrown through the air and onto the roadway surface. As a result, Rice maintains that he suffered various abrasions and lacerations to his extremities. Rice alleges that the negligence of the Corps in maintaining the roadway is the direct and proximate cause of his injuries, for which he seeks damages.[2]

The Government moves to dismiss Rice's claims under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) or, alternatively for summary judgment under Fed. R. Civ. P. 56, on the basis that it is immune from liability under the Federal Tort Claims Act ("FTCA"). The Government argues that the Corps' decision to contract with the Delaware Department of Transportation ("DelDOT") for maintenance of the road's surface falls under the "discretionary function exception" of the FTCA. If the Corps' decision does not fall within that exception, then the Government claims that Rice's action should be dismissed for lack of subject matter jurisdiction.

Additionally, the Government moves for dismissal on the basis that DelDOT is an

---

[1] D.I. 10 at 1.

[2] By Order dated August 6, 2006, the United States was substituted for the Corps and the Corps was dismissed from the action.

2

"independent contractor" in maintaining the roadway surface. Under the FTCA, the Government argues that it is not liable for the negligent acts of an independent contractor. The Government posits that by that contract, DelDOT was responsible for the maintenance and signage of the roadway. Therefore, the Government contends that Rice has failed to state a claim upon which relief may be granted for which summary judgment is warranted. This opinion addresses the Government's combined motions.[3]

**Facts**

On or about May 29, 2005 at around 12:31 p.m., Rice was operating his motorcycle in the right southbound lane of Route 896 approaching the Summit Bridge. As noted previously herein, during his approach to the bridge, he struck a large pothole causing him to be thrown from the motorcycle onto the bridge incline. As a result of being propelled onto the road surface, Rice claims his injuries are the result of the Corps' negligence.

It is undisputed that the Corps owns the Summit Bridge and the approaches to it as of the date of the incident. The Corps, however, contracted with DelDOT to maintain the section of the roadway in question. Specifically, the contract provides that DelDOT

shall maintain the traveled surface of the Summit Bridge and approaches thereto, from approximately 2,210 feet to the south from the roadway construction joint at the end of the south abutment parapet wall and to approximately 1,603 feet to the north from the roadway construction joint

---

[3] This matter was referred to Magistrate Judge Mary Pat Thynge by the Honorable Sue L. Robinson pursuant to 28 U.S.C. § 636 and Fed. R. Civ. P. 72. *See* D.I. 31.

3

at the end of the north abutment parapet wall.[4]

It is not disputed that the incident occurred within those parameters.

Under the terms of the contract, road maintenance includes posting any necessary warning signs and delineators for traffic control guidance and information, and performing "minor repairs to the roadway surface not in excess of ten (10) square yards without prior written approval of the government, " as well as, maintaining the slopes of the approaches.[5]

Occasionally, in certain limited circumstances, the Corps may have repaired potholes on the relevant stretch of the roadway.[6] According to David Olson ("Olson"), Assistant Chief of Operations for the Corps, that only occurred when particular conditions arose: a pothole condition was urgently brought to the Corps' attention; DelDOT was unable to make the repair promptly; and, the Corps had the resources available to make the repair.[7] The Corps' contractual obligation, however, was to reimburse DelDOT for expenses.

## Legal Standard

### Motion to Dismiss

A motion to dismiss is governed by Fed. R. Civ. Pro. 12(b)(6).[8] Rule 12(b)(6)

---

[4] D.I. 9 at A-3, ¶ 1.

[5] *Id.* at A-4, ¶ 5.

[6] *Id.* at A-1, A-2 (affidavit of David Olson).

[7] *Id.* at A-1, ¶ 5.

[8] *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409-10 (3d Cir. 1991) (citing *Lunderstadt v. Colafella*, 885 F.2d 66, 70 (3d Cir. 1989) ("The threshold to withstand a motion to dismiss under [Rule] 12(b)(1) is thus lower than that required to

4

permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted.[9] The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve dispute facts or decide the merits of the case.[10] To that end, a Rule 12(b)(6) motion should be granted only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[11] The court assumes that all factual allegations in a plaintiff's complaint are true and draws all reasonable factual inferences in the light most favorable to that plaintiff.[12] The court, however, should reject unsupported allegations, "bald assertions," or "legal conclusions."[13]

Rule 12(d) addresses the use of materials which are outside the pleadings in motions to dismiss under Rule 12(b)(6). When such matters are presented, the motion is treated as one for summary judgment.

Summary Judgment

Granting summary judgment pursuant to Fed. R. Civ. P. 56(c) is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and

---

withstand Rule 12(b)(6) motion.")).

[9] Fed. R. Civ. P. 12(b)(6).

[10] *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

[11] *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

[12] *Morse v. Lower Marion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

[13] *Id.* (citations omitted).

5

that the moving party is entitled to a judgment as a matter of law."[14]  A Rule 56(c)

movant bears the burden of establishing the lack of a genuinely disputed material fact

by demonstrating "that there is an absence of evidence to support the nonmoving

party's case."[15]  "Where the record taken as a whole could not lead a rational trier of

fact to find for the non-moving party, there is no genuine issue for trial."[16]  The

nonmovant must be given the benefit of all justifiable inferences and the court must

resolve any disputed issue of fact in favor of the nonmovant.[17]  The mere existence of

some evidence in support of the nonmoving party, however, is insufficient to deny a

motion for summary judgment; there must be enough evidence to enable a jury to

reasonably find for the nonmoving party on that issue.[18]  If the nonmoving party fails to

make a sufficient showing on an essential element of its case, the moving party is

entitled to judgment as a matter of law.[19]

A court may stay or deny summary judgment "if a party opposing the motion

shows by *affidavit* that, for specified reasons, it cannot present facts essential to justify

is opposition."[20]  A party moving pursuant to Rule 56(f), however, must submit an

affidavit explaining "what particular information is sought; how, if uncovered, it would

---

[14] Fed. R. Civ. P. 56(c).

[15] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[16] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[17] *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992).

[18] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

[19] *See Celotex Corp.*, 477 U.S. at 325.

[20] Fed. R. Civ. P. 56(f) (emphasis added).

preclude summary judgment; and why it has not been previously obtained."[21]  A mere

legal memorandum is insufficient, and the failure to comply with Rule 56(f) in all, but the

most exceptional cases, is "fatal to a claim of insufficient discovery on appeal."[22]

### FTCA Liability

The FTCA authorizes actions for damages against the United States in certain

circumstances:

> [F]or injury or loss of property, or personal injury or death *caused by* the
> negligent or wrongful act or omission *of any employee of the Government
> while acting within the scope of his office of employment*, under
> circumstances where the United States, if a private person, would be held
> liable to the claimant in accordance with the law of the place where the act
> or omission occurred.[23]

Liability under the FTCA is limited by the discretionary function exception found

under 28 U.S.C. § 2680(a):

> [t]he provision of [the FTCA] and section 1346(b) of this title shall not
> apply to - (a) any claim based upon an act of omission of an employee of
> the Government, exercising due care, in the execution of a statute or
> regulation, whether or not such statue or regulation be valid, or *based
> upon the exercise* or performance or *the failure to exercise* or perform a
> discretionary function or duty on the part of a federal agency or an
> employee of the Government, *whether or not the discretion involved be
> abused.*[24]

_____

[21] *Doe v. Abington Friends School*, 480 F.3d 252, 256 (3d Cir. 2007) (citations
omitted).

[22] *Bradley v. United States*, 299 F.2d 197, 207 (3d Cir. 2002); *see also Radich v.
Goode*, 886 F.2d 1391, 1394 (3d Cir. 1989).

[23] Federal Torts Claims Act, 28 U.S.C. §§ 1346(b), 2671 et. seq. (emphasis
added).

[24] 28 U.S.C. § 2680(a) (emphasis added).

**Position of the Parties**

<u>Government's Position</u>

The Government argues that, as part of its analysis, the court must strictly construe any waiver of its immunity as a sovereign under the FTCA. As a result, since all of its arguments are grounded in an exception to the FTCA's limited waiver of sovereign immunity, there is no subject matter jurisdiction or Rice has failed to state a claim upon which relief may be granted.

The Government maintains that when the Corps entrusted the responsibility to DelDOT of maintaining both the Summit Bridge and the roadways leading to it, including the necessary signs and delineators for traffic control guidance or information, such conduct was discretionary. Relying on the Olson affidavit, the Government notes that there are no mandatory guidelines restricting, controlling or limiting the Corps' decision to enter the maintenance contract with DelDot. The Government points to the public policy considerations including public safety and conservation of limited economic resources involved in the Corps' discretionary decision. Relying on case law, the Government notes that the matter of how to best allocate resources and the manner in which it is done is insulated from "judicial second guessing."[25] Therefore, the Government maintains that even if the contract between the Corps and DelDOT did not exist, its failure to repair and failure to warn is not actionable under the FTCA.

The Government also claims that because DelDOT is an independent contractor, the alleged negligence was not the conduct of "employees of any federal agency" as

_____

[25] D.I. 9 at 7, quoting *Baum v. United States*, 986 F.2d 716, 724 (4th Cir. 1993)

8

required under the FTCA. The Government posits that for liability, the Corps must exercise supervision over the day-to-day operations or control the actual performance of the contractor. Pointing to the language of the contract between the Corps and DelDot and the Olson affidavit, the Government submits that DelDOT's activities in relation to maintenance activities was not within the its control.[26]

In response to Rice's arguments, the Government contends that the issues involved are matters of law, specifically that the Corps had no duty to repair and there is no evidence to support the existence of such a duty. It notes that if the discretionary function exception applies, that any alleged negligence in failing to repair or warn are irrelevant because of the operation of 28 U.S.C. § 2680(a). The Government maintains that Rice's arguments regarding "some unidentified mandatory statute, regulation or policy" is speculative and not supported by the facts or the law.

Finally, the Government rejects Rice's argument on the possible existence of mandatory guidelines as applicable to DelDOT for road maintenance. It further posits that the consideration of pubic policy supports its discretionary function analysis.

Rice's Position

Rice's primary argument is that the motion for dismissal or summary judgment is premature. Regarding the discretionary function exception, Rice notes that no discovery has occurred regarding "issues of judgment or choice and the existence of a mandatory statute, regulation or policy,"[27] and there has been no exploration of the

---

[26] See D.I. 9 at A-2, A-5, ¶ 13.

[27] D.I. 10 at 4.

9

public policy considerations. Rice contends that the Olson affidavit raises a genuine issue of material fact on how often the Corps was involved in "'occasional' road repair."[28]  Rice also claims that no discovery has occurred on whether there were no mandatory guidelines, including statutes, applicable to the Corps' decision to enter into the maintenance contract with DelDOT, and argues that the Olson affidavit may not be conclusive on that analysis.  Concerning the public policy considerations, Rice argues that the Government has failed to show that the decision to enter into the maintenance contract is "the permissible exercise of policy judgment" under the *Berkovitz* analysis,[29] a case relied upon by the Government.  Again, he posits that he should be allowed to take discovery on those issues.

Finally, Rice contends that, despite the contract, discovery is needed to determine the actual relationship between the Corps and DelDOT.

**Analysis**

FTCA and the Discretionary Function Exception

As sovereign, generally the United States is immune from suit, except where it consents to be sued.  Under those limited circumstances, the "terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit."[30]  Any waiver of sovereign immunity must be strictly construed and all ambiguities must be determined

---

[28] D.I. 10 at 5.

[29] *Berkovitz v. United States*, 486 U.S. 531, 537 (1988).

[30] *United States v. Mitchell*, 445 U.S. 535, 538 (1980).

10

in favor of the United States.[31]  Statutory consent has been given under the FTCA,
which provides limited authorization for action against the United States for recovery of
damages.  Pursuant to the statute, the injury must be caused by the negligent or
wrongful act or omission of government employee; and, that employee must be acting
within the scope of his employment.[32]  The consent under the FTCA is further restricted
by the provisions of 28 U.S.C. § 2680(a), the discretionary function exception.  This
exception "marks the boundary between Congress' willingness to import tort liability
upon the United States and its desire to protect certain governmental activities from
exposure to suit by private individuals."[33]  The purpose of the discretionary function
exception is "to prevent judicial 'second guessing' of legislative and administrative
decisions grounded in social, economic, and political policy through the medium of
action in tort."[34]  By enacting § 2680(a), Congress took "steps to protect the
Government from liability that would seriously handicap efficient government
operations."[35]

    Determining whether the discretion function exception operates is subject to a
two-tiered analysis.  The first tier is whether the government action complained of

---

[31] *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33 (1992).

[32] 28 U.S.C. § 2671.

[33] *United States v. Varig Airlines*, 467 U.S. 797, 808 (1984).

[34] *Baum v. United States*, 986 F.2d 716, 719 (4th Cir. 1993), relying on *Varig Airlines*, 467 U.S. at 814.

[35] *Varig Airlines*, 467 U.S. at 814.

"involves an element of judgment or choice"[36] That issue includes whether the
government conduct in question is subject to any mandatory federal statute, regulation,
or policy which prescribes a specific course of action. If such mandatory restrictions
exist, then there is no judgment or choice because the government actor "has no
rightful option but to adhere to the directive."[37] A plaintiff, however, needs to show that
the government employee failed to adhere to the mandatory standard to prevent his
claim from falling within the discretion function exception.[38]

In the absence of a mandatory directive, the second step of the *Berkovitz-
Gaubert* analysis asks whether the choice or judgment was "based on consideration of
public policy."[39] That analysis is not "a fact-based inquiry into the circumstances
surrounding the government actor's exercise of a particular discretionary function."[40]
Rather, the court looks "to the nature of the challenged decision in an objective, or
general sense, and ask[s] whether that decision is one . . . inherently . . . grounded in
considerations of policy."[41] As noted in *Gaubert*,

[f]or a complaint to survive a motion to dismiss, it must allege facts which

---

[36] *Berkovitz*, 486 U.S. at 536; *see also United States v. Gaubert*, 499 U.S. 315,
322-23 (1991).

[37] *Berkovitz*, 486 U.S. at 530.

[38] *Id.*

[39] *Berkovitz*, 486 U.S. at 530; *Gaubert*, 499 U.S. at 322-23 (wherein the court
noted that when a government employee drives his vehicle in connection with his
official duties and negligently collides with another vehicle, the exception would not
apply because such conduct, although discretionary, is not based on public policy).

[40] *Baum,* 986 F.2d at 720-21.

[41] *Id.* at 721 (relying on *Gaubert*, 499 U.S. at 324-25).

12

would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in policy of the regulatory regime. The focus of the inquiry is not on the agent's subjective intent in exercising discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis.[42]

In applying the *Gaubert* analysis, the *Baum* court concluded

[c]onsistent with the *objective* approach to evaluation of whether a particular discretionary act is grounded in policy consideration is the well-established presumption that public officials have *properly discharged* their official duties. . . . Under this presumption and the teaching of *Gaubert*, we will not assume that government agents . . . in a particular case acted arbitrarily or on whim . . . . Thus, our inquiry here must focus on the inherent, objective nature of the challenged decision; we find *largely irrelevant* the presence or absence of evidence that involved government agents which did or did not engage in a deliberative process before exercising their judgment.[43]

Review of Rice's complaint shows that he claims that the Corps owned or

controlled the bridge incline, and had the sole responsibility for maintaining and/or

operating the bridge and its incline. The basis of the negligence alleged is that the

Corps had the duties, which it allegedly failed to do, of maintaining the bridge and its

appurtenances in a safe and drivable condition and to warn of potential hazards. Rice

has presented no mandatory standards which govern the Corps maintenance of

bridges, although he requests the opportunity to take discovery from the United States

to find such public information. The Government has presented the Olson affidavit

which notes that there are no mandatory directives which would require the Corps to

perform road maintenance: rather, the Corps is authorized, in its discretion, to contract

---

[42] *Gaubert*, 499 U.S. at 324-35.

[43] *Baum*, 986 F.2d at 721 (internal citations omitted) (emphasis added).

for such maintenance. Moreover, Olson notes that in discharging the responsibility for road maintenance, the Corps follows the regulations published in volume 23 of the Code of Federal Regulations.

As a basis to take discovery on the issue of mandatory standards, Rice makes much ado about the wording of Olson's statement, that is, that he is "unaware of any mandatory regulation or directive." According to *Webster's College Dictionary* 2d Edition, "aware" means informed, knowledgeable, certain or cognizant. Unaware, therefore, would mean that Olson, in his position as Assistant Chief of Operations, has no personal knowledge or information of or is certain that no such mandatory requirements exist. Since Rule 56(e) provides that affidavits must be based on personal knowledge or information, his affidavit is adequate to support the Government's position. Furthermore, like evidence from Rice is necessary to refute his declaration. Although directed to 23 C.F.R. in the Olson affidavit, Rice does not suggest any provisions therein that mandate certain conduct in relation to maintenance or warnings on the part of the Corps. He also does not direct the court to any statute which operates as a directive for the Corps in the area of roadway maintenance or warnings. Therefore, maintenance and warnings are a function subject to the judgment of the Corps to determine when, how and by whom its bridges are to be maintained and what and by whom, if any, warnings are to be provided.

Therefore, the only issue remaining is whether the Corps judgment in that regard is of the type normally involving considerations of economic, social, or political policy. In analyzing that issue, examination of what Rice contends that the Corps should have done is appropriate. Rice alleges that the Corps should have repaired and should have

14

warned of the hazard.

The Government has presented a contract between the Corps and a state agency, DelDOT, which unequivocally on its face provides that DelDOT is responsible for all maintenance and warnings. Further, the contract specifically notes that "no agency or employer/employee relationship, nor . . . a third party beneficiary" relationship is created by the agreement.[44]  Moreover, the contract specifically notes that any government legal liability, if it exists, is limited to the application of the FTCA. As a result of the contract, the Corps has not additionally waived sovereign immunity, but has applied limited liability as it is under the law.

Rice contends that the Corps should have repaired the roadway because the Corps may have in very limited situations previously repaired the roadway. Rice's argument presupposes that a duty or requirement existed that once a hazard occurred, the Corps had the obligation to repair and warn. As noted previously herein, no mandatory standard has been presented requiring either the repair or warning be instituted. Rice's argument that the relationship between the Corps and DelDOT requires further exploration through discovery misses the point. "The existence of choice is essential to the application of the exception."[45]  According to the unambiguous and undisputed language of the contract, DelDOT was responsible for all repairs and warnings. At most the Olson affidavit suggests that in limited situations, the Corps could choose to make the repairs, but was under no requirement to do so. Therefore,

---

[44] D.I. 9 at A-5, ¶ 13.

[45] *Berkovitz*, 486 U.S. at 536.

the issue remaining is whether the contractual arrangement between the Corps and
DelDOT and the Corps' judgment in entering into such a contract falls within public
policy considerations.

Although the Government has the burden of proving the application of the
discretionary function exception to the FTCA's waiver of immunity, as noted in the
Olson affidavit, the decision to enter into contracts for road maintenance takes into
account budgetary constraints and public safety. Such judgment falls within the
discretionary function exception since the decision of how and who would do repairs
and issue warnings involve how to best allocate resources. That decision is "inherently
bound up in considerations of economic and political policy . . . precisely the type of
governmental decision that Congress intended to insulate from judicial second
guessing. . . ."[46] It goes to the policy considerations of efficiency, effectiveness and
cooperation with state agencies that share mutual interests with the government.

Rice's reliance on *ARA Leisure Services v. United States* is misplaced. In that
matter, a tour bus company sought damages for injuries sustained by its passengers
when the vehicle fell off a badly eroded area of road in a national park. The plaintiff
alleged negligence in the design, construction and maintenance of the roadway in
question. In reversing in part the district court's finding for the government under the
discretionary function exception, the Ninth Circuit determined that the failure to maintain

---

[46] *Baum*, 986 F.2d 724; *see also Mitchell v. United States*, 225 F.3d 361, 365-66
(3d Cir. 2000); *Richardson v. United States*, 943 F.2d 1107, 1112 (9th Cir. 1991).
Moreover, the Government need not "prove that it considered these [policy] factors and
made a conscious decision on the basis of them." *Kennewick Irrigation Dist. v. United
States*, 880 F.2d 1018, 1028 (9th Cir. 1989).

the road was not a discretionary act.  In that case, the matter involved erosion of the

park roadway from the original width to a width of about half at the accident site.  In that

circumstance, the decision not to repair was outside a discretionary act because the

evidence showed that the Park Service standards required that its roads "'conform to

the original grades and alignments' and that grade roads be 'firm, [and] of uniform cross

section.'"[47]  Therefore, the decision by the appellate court turned on the first tier of the

*Berkovitz-Gaubert* analysis, that is, whether there existed mandatory standards

requiring the government to act and eliminating discretion and, if so, whether those

regulations were met.  No such mandatory directives have been presented in the

instant matter.

Further, whether the decision of the Corps to contract certain work is routine or

frequent is also irrelevant.  As noted in *Gaubert*, if such activity "were sufficient to

remove an otherwise discretionary act from the scope of the exception, then countless

policy-based decisions by regulators exercising day-to-day supervisory authority would

be actionable.  This is not the rule of our cases."[48]  Obviously, the subjective intent of

the Corps is irrelevant because "the issue is not whether the government agency or

official actually balanced social, economic or political considerations:"  it is whether the

actions "are *susceptible* to policy analysis."[49]

Although not mentioned in his opposition brief, Rule 56(f) controls whether

---

[47] 831 F.2d 193, 195 (9th Cir. 1987).

[48] *United States v. Gaubert*, 499 U.S. 315, 334 (1991).

[49] *Id.* at 326 (emphasis added).

17

discovery is needed to oppose a motion for summary judgment. The court has

discretion to defer a ruling on summary judgment if the nonmovant files an affidavit

indicating how the discovery requested would operate to defeat the motion.[50]

Adherence to the Rule is not optional:

> [R]ule 56(f) clearly requires that an affidavit be filed. The purpose of the
> affidavit is to ensure that the nonmoving party is invoking the protection of
> [the rule] in good faith and to afford the trial court the showing necessary
> to assess the merit of a party's opposition. An unsworn memorandum
> opposing a party's motion for summary judgment is not an affidavit.[51]

In opposing the Government's motion, Rice merely lists areas of potential

exploration, such as, the underlying issues or choice in determining whether to enter

into the contract; whether the Olson affidavit is speculative and not conclusive on the

issues; whether actions or inaction of DelDOT are imputed to the Government; and,

whether DelDOT is held to be an employee of the Corps. Such argument does not

comply with Fed. R. Civ. P. 56(f).

Moreover, as noted previously herein, the areas of exploration proposed by Rice

are irrelevant to the court's analysis because that analysis largely does not turn on the

type of facts upon which Rice propounds to learn through discovery. Rice's proposed

discovery, albeit not clearly defined nor sufficient to allow the court to properly assess

the merit of his opposition, appears to focus on whether the Government exercised its

discretion negligently. Even if it did, its actions "would still be shielded from liability as

28 U.S.C. § 2680(a) protects discretionary acts 'whether or not such discretion be

---

[50] *Radich v. Goode*, 886 F.2d 1391, 1393 (3d Cir. 1989).

[51] *Pastore v. Bell Telephone Co. of Pennsylvania*, 24 F.3d 508, 510-11 (3d Cir. 1994) (internal citations omitted).

abused.'"[52]

As a result, there is no need for discovery on the discretion function exception
and that exception applies.

Independent Contractor Exception

The FTCA requires the injuries to be caused by the negligence of "employees of
any federal agency."[53] That statutory definition "'does not include state agencies or
instrumentalities.'"[54]

In his opposition to the Government's argument that DelDOT is an independent
contractor, which operates to shield the Government from the conduct of a government
contractor, Rice contends that the Government's evidence in support of its proposition,
that is, the Olson affidavit and the 1983 contract between the Corps and DelDOT are
somehow inadequate. Rice argues that discovery "is needed to determine the actual
relationship of the Corps and DelDOT."

Rice acknowledges that the distinction between an employee and independent
contractor rests on the authority "'to control the detailed physical performance of the
contractor.'"[55] He further recognizes that the Government is not liable "'by virtue of
entering into contracts and demanding compliance with federal standards unless'" it

[52] *Fahl v. United States*, 792 F. Supp. 80, 83 (D. Ariz. 1992).

[53] 28 U.S.C. § 2671.

[54] *Sant v. United* States, 896 F. Supp. 639, 641 (W.D. La. 1992), quoting *Hejl v. United States*, 449 F.2d 124 (5th Cir. 1971).

[55] D.I. 10 at 7, quoting *Logue v. United States*, 412 U.S. 521, 528 (1973).

19

actually supervises the day-to-day operations.[56]  He admits that the contract evidences

an intention for an independent contractor relationship between the Corps and DelDOT.

Rice asks for discovery on whether the conduct of the parties supports the Olson

affidavit and the contractual language.

Again, Rice's request for discovery and postponing a decision falls short of the

requirements of Rule 56(f).

In his capacity as Assistant Chief of Operations, Olson's sworn statement is that

he is familiar with the contract and the road maintenance and signage work performed

under the contract. Via his affidavit, he confirms that DelDOT "took nearly complete

control for customary road maintenance" which included filling potholes. He

substantiates that in performance of its obligations under the contract, DelDOT used its

"own tools, equipment, materials and labor."  He maintains that the Corps did not

supervise the day-to-day operations which were in DelDOT's responsibility and that the

Corps "retained no control over the detailed physical performance of DelDOT in

connection with either road maintenance or signage."[57]  Olson's declaration is

consistent with the contract language previously noted herein, where no agency or

employer/employee relationship resulted from the agreement.  Further, the contract

also required that for DelDOT to be reimbursed by the Corps "complete and accurate

record of the costs of such maintenance" which included itemizations for labor,

---

[56] *Id.*, quoting *Williams v. United States*, 50 F.3d 299 (4th Cir. 1995).

[57] D.I. 9, A-2, ¶ 6-7.

equipment and material costs.[58]  As shown by both the Olson affidavit and the contract,

DelDOT is the contractor and by statutory definition neither a federal agency nor

employee of the Government.  By Rice's own admission, the contract is not ambiguous.

Further, there is nothing to imply that Olson lacks the appropriate knowledge or is

untruthful.

## Conclusion

For the reasons contained herein, I recommend that the United States' motion to

dismiss or, in the alternative, for summary judgment (D.I. 8) be GRANTED.

An appropriate Order will follow.

[58] D.I. 9, A-4, ¶ 8.